UNITED STATES of America, Plaintiff,

v.

Alan Herbert ABRAHAMS, a/k/a James A. Carr, Defendant.

Cr. No. 78–4–C.

United States District Court, D. Massachusetts.

March 21, 1978.

Michael A. Collora, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Harvey Brower, Lawrence, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This matter came before the Court on the basis of defendant's motion to be admitted to bail. After an evidentiary hearing at which defendant waived by counsel his right to be present and called six witnesses, I find and rule as follows:

Defendant Alan H. Abrahams, a/k/a James A. Carr, is presently under a one-count indictment in this Court for violation of 18 U.S.C.A. § 1001. He is also presently under a charge of escaping from a state penal institution in New Jersey, where he was serving a sentence of four to six years. He is under the charge of probation violation in the United States District Court for the Southern District of New York, and, finally, he is under a criminal contempt of court charge in the United States District Court for the Western District of Michigan. At the hearing, counsel for defendant conceded that Abrahams is currently being held without bail in connection with the charges pending in all three Federal District Courts.

During the course of the hearing, it was established by testimony which I believe, or alternatively by concessions of counsel, that Abrahams in fact did flee the state penal farm in New Jersey while serving a sentence and was without authority to do so. It was further established that, despite having posted $100,000 bail after a United Sates Magistrate's hearing in this Court in January, 1978, defendant later failed to appear as directed by the Magistrate. Additionally, defense counsel stated that when Abrahams was arrested by the FBI in Florida on January 25, 1978, he was registered at a resort hotel under the name Barrett. Defendant's 18-year-old daughter, Laurie Abrahams, testified that she was with her father at the time of the Florida arrest, and that his hair then was tinted a different color from its normal shade. The fact that Abrahams' family accompanied him to Florida is consistent with an established pattern, more fully described below, of leaving no family members behind who could help locate the defendant upon inquiry by law enforcement authorities.

Miss Abrahams also testified that she and her sister Allison have been living with their father for approximately the last 2½ years, and that during that time the home was shared by a woman named Lynn Heinsius. Laurie Abrahams testified that from about December, 1974 to December, 1975, defendant, his two daughters, and Lynn Heinsius lived as a family unit in Montreal, Canada, where all four of them used the surname Wayne. Laurie testified that when the Canadian authorities began to inquire about possible deportation of defendant, the group moved to the Bahamas where they used the family name Abrahams. After a short time in the Bahamas, they next moved to Santa Monica, California, where they used the family name Layne, the name under which Laurie attended school in Santa Monica.

Criminal charges were brought against defendant in California, but Laurie expressed the belief that these charges were straightened out before they left California. In any event, the group then moved to the Boston area, where Lynn Heinsius, almost on the day of arrival, gave birth to a girl in a Boston hospital using the family name Conley (or Conlee). After this birth, the surname Carr was used by the five members of the group. Laurie and her sister Allison attended various schools in New England under the family name Carr. Defendant most recently did business under the name James A. Carr, as President of Lloyd, Carr & Co., a commodity options brokerage firm.

Several former employees of Lloyd, Carr & Co. testified that the firm has been under intense investigation by various public regulatory agencies for approximately the last fourteen months. The testimony of James A. Brien, former Vice President of Lloyd, Carr & Co., was of little probative value on the issues to be resolved herein. He testified that his employment with the Carr commodity options brokerage began in November, 1976, that the business had substantial problems, and that he was never told by defendant to take action to "wind down" the business, up to and including January 10, 1978, the day on which both Brien and defendant were arrested by the FBI. All that Brien was told by Abrahams prior to defendant's travel to Florida was that defendant intended to go away for a few days to avoid publicity. Brien impressed me as a singularly unreliable witness. Although conceding he was a college

graduate, Brien denied knowing that apprehension, transportation to a police station, booking, and fingerprinting constitute being arrested, denied understanding the distinction between an arrest and a conviction, and only grudgingly admitted on cross-examination that he had been convicted in a District Court of the Commonwealth and now has an appeal therefrom pending in Middlesex Superior Court. He stated that at the arraignment he had told the Magistrate that he had never been arrested or convicted; on cross-examination, he conceded that neither of those answers to the Magistrate was the truth. In sum, I give no weight to Brien's testimony because I have extreme reservations as to his truthfulness.

Ralph R. Zolla, former trading-floor manager for Lloyd, Carr & Co., likewise testified that, after the posting of the bail set by the Boston Magistrate, and prior to Abrahams' flight to Florida, he never was informed of any plans of defendant to flee the jurisdiction or discontinue the brokerage business. Zolla admitted on cross-examination that he was convicted of assault and battery on a photographer, who was apparently attempting to take a photograph of defendant Abrahams in the brokerage office in December, 1977.

■ I find that the testimony of the employees of Lloyd, Carr & Co. was not probative of any facts relative to the issues to be decided on a motion to admit a defendant to bail. The common denominator in their testimony was a strong loyalty to defendant, despite the demise of Lloyd, Carr & Co., and the various legal problems, civil and criminal, presently confronting him and his firm. It is obvious that none of the employees was taken into Carr's confidence.

Charles Evans, who described himself as a chauffeur-caretaker for defendant, stated that he was hired by Abrahams on November 11, 1977 as a resident chauffeur-housekeeper-handyman. He still lives in defendant's former home at 201 Ocean Avenue, Marblehead. Evans testified that he has not received any salary from defendant since January 6, 1978, but is firmly confident that he will be paid in the future. His testimony, in substance, was that Abrahams, prior to departing Boston for Florida, never told him that he was planning anything more than a couple of days of vacation. I rule that Evans' testimony, like that of Brien and Zolla, is of no probative value on the question of defendant's likelihood to respond to court orders and to appear if bailed, particularly since the testimony amounted only to the fact that Abrahams told Evans virtually nothing about his plans, intentions or private business.

■ In summary, I rule that the fact that defendant did not announce his plans in advance to witnesses Evans, Brien, and Zolla is no evidence at all of the thought processes of defendant's mind. It is enough to repeat the axiom that what a man does is often more probative of his state of mind than what he says or fails to say. While the testimony of these three witnesses does not establish that defendant intended to flee, it, more importantly, fails of its intended purpose to establish that defendant did not intend to flee. This leaves the record consisting primarily of the fact that defendant Abrahams' present status before the Court is that of a person who escaped from a New Jersey prison while serving a four to six year prison sentence, who, after posting $100,000 cash bail, defaulted on a scheduled appearance, and who is a person facing other criminal charges and a plethora of civil litigation.

Title 18 U.S.C.A. § 3146(a) provides that in setting bail in noncapital cases prior to trial, the Court shall:

[O]rde[r] [the] releas[e] [of the defendant] pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose the first of the following conditions of release which

will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:

(1) place the person in the custody of a designated person or organization agreeing to supervise him;

(2) place restrictions on the travel, association, or place of abode of the person during the period of release;

(3) require the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security as directed, of a sum not to exceed 10 per centum of the amount of the bond, such deposit to be returned upon the performance of the conditions of release;

(4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or

(5) impose any other condition deemed reasonably necessary to assure appearance as required; including a condition requiring that the person return to custody after specified hours.

In view of the record of defendant's jail escape in New Jersey, his defaulting on a $100,000 cash bond in this Court, and his proclivity for living in different parts of this country, Canada and the Bahamas under multiple fictitious names, as well as the pendency of revocation of probation proceedings and contempt proceedings against him in Federal District Courts in New York and Michigan, his serious legal problems with the State of New Jersey because of the jail escape, and his exposure to a maximum sentence in the instant case of a fine of not more than $10,000 and imprisonment for not more than five years, or both, I find and rule, in the exercise of my statutory discretion, that none of the five conditions spelled out in 18 U.S.C.A. § 3146(a), or any combination thereof, will reasonably assure the appearance of defendant for trial if admitted to bail. Consequently, the motion to establish bail is denied.